IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE



| | |
|---|---|
| EDWINA FRANKLIN )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>THE SECRETARY, UNITED STATES )<br>DEPARTMENT OF HOUSING )<br>AND URBAN DEVELOPMENT )<br>) | 22 - 1 3 5 5 |

Under 28 U.S.C . § 1391, Ms. Franklin is a resident of Newark, DE and the Defendant is the U.S. Government. Ms. Franklin believes this court has jurisdiction over this case.

In 1968, Congress enacted the Fair Housing Act of the United States to provide, within constitutional limitations, for fair housing throughout the United States." Sec 801 [42 U.S.C§3601].

Ms. Franklin requests a Jury Trial

Statutory Background

### I. The Department of Housing and Community Development

1. "The Department of Housing and Urban Development (HUD) is responsible for national policy and programs that address America's housing needs, that improve and develop the Nation's communities, and enforce fair housing laws" (U.S. Department of Housing and Urban Development, n.d.). In 1988, Congress enacted Title VIII of the Civil Rights Act of 1968, commonly known as the Fair Housing Act (FHA), with H.R. Rep. No. 711, 100 Cong. 2d Sess. 15. The Civil Rights Act of 1968 was established "following urban unrest of the mid 1960s and in the aftermath of the assassination of the Rev. Dr. Martin Luther King, Jr." Am. Ins. Ass'n v. U.S. Dep't of Hous. & Urban Dev., 74 F. Supp. 3d 30 (D.D.C. 2014). According to 42 U.S.C. § 3601, the FHA is to "provide, within constitutional limitations, for fair housing throughout the United States." To accomplish this purpose, 42 U.S.C. § 3604(b) of the FHA made it unlawful to refuse to sell or rent:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

1

2.      In 1988, Congress amended the FHA, see Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 1102 Stat. 1619, to include sex, familial status, and handicap as protected characteristics; 42 U.S.C. §§ 3604 to include (a) sex and familial status, (f)(2) (handicap).

3.      To address severely distressed housing as well as homeownership opportunities, Housing Opportunities for People Everywhere (HOPE VI) was created by the Departments of Veterans Affairs and HUD, and Independent Agencies Appropriations Act, 1993 (Pub. L. 102-389), which was approved on October 6, 1992. "HOPE VI operated solely by congressional appropriation from FY 1993-1999. The FY 1999 appropriation included the congressional authorization of HOPE VI as Section 24 of the U.S. Housing Act of 1937. Section 24 was implemented in the FY 2000 Notice of Funding Appropriations (NOFA) and was reauthorized in conjunction with the American Dream Downpayment Initiative of 2003. Grants are governed by each Fiscal Year's Notice of Funding Availability (NOFA), as published in the Federal Register, and the Grant Agreement executed between each recipient and HUD". (U.S. Department of Housing and Urban Development, n.d.)

4.      The Department of Housing and Urban Development awarded The Jersey City Housing Authority (JCHA) HOPE VI funding to revitalized Lafayette Gardens Housing Development. The terms of the grant can be found in the Notice of Funding Availability and executed grant agreement.

Parties

1. At all times relevant to this complaint, Plaintiff, Edwina Franklin, is a beneficiary of 2001 Lafayette Gardens HOPE VI homeownership funding.
2. At all times relevant to this complaint, Plaintiff has been a person with a disability within the meaning of 42 U.S.C § 3602 (h).
3. At all times relevant to this complaint, Plaintiff resides in the Subject Property in Newark, Delaware. The Subject Property is a "dwelling" as defined by 42 U.S.C. § 3602 (b).
4. At all times relevant to this complaint, Plaintiff is an "aggrieved" person as defined by 42 U.S.C. § 3602 (i)(1)(2).
5. At all times relevant to this complaint, Defendant, the Department Housing and Urban Development, is the statutory authority that enforces Fair Housing, Fair Housing that reaches the Equal Credit Protection Act, The Civil Rights Act, investigates complaints, and ensures compliance.
6. At all times relevant to this complaint, Defendant was responsible for the superintendency of the Lafayette Gardens HOPE VI program.
7. At all times relevant to this complaint, The Jersey City Housing Authority is awardee of Lafayette Gardens HOPE VI revitalization funding
8. At all times relevant to this complaint, The Jersey City Housing Authority is a second-silent interest holder to the Subject Property in Newark, Delaware.

Statement of the Issues

9. Determine whether The Department of Housing and Urban Development violated procedural due process resulting in repeated Civil Rights and Fair Housing Act violations.
10. Determine whether the Department of Housing and Urban Development Homeownership policy violates the FHA and result in a disparate treatment of individuals in a protected class.
11. Determine whether The Homeownership Contract imposed on Edwina Franklin is Unconscionable.

Facts

5.  "The Jersey City Housing Authority is a nonprofit corporation organized under the laws of the State of New Jersey to provide housing for qualified individuals in accordance with U.S. Department of Housing and Urban Development (HUD) rules and regulations" (Audit Report, 2011-NY-1007). The JCHA in Jersey City, New Jersey, was awarded $34,140,000, under the 2001 HOPE VI Revitalization Grant, to revitalize Lafayette Housing Development, resulting in the displacement of 492 families (HOPE VI Revitalization Grant, 2001). Under the HOPE VI Revitalization Plan, The Jersey City Housing Authority proposed to do the following:

- Demolish 492 existing public housing units.
- Replace the 492 units with 300 mixed-income community units located on-site and immediately adjacent to the existing public housing site.
- Build an additional 550 units off-site.

6.  According to this plan, out of a total of 850 new units, 322 would have been public housing replacement units, 292 would have been public housing rental units, and 30 would have been public lease-purchase units. According to the executed grant agreement, the Hope VI project had to have been completed no later than 54 months (4.5 years) from the date of the executed grant agreement, or before October 16, 2006. Based on the Jersey City Housing Authority's submission to HUD, 492 units would have been demolished and replaced with 131 public housing units, 129 affordable rental units, and 30 homeownership units.

7.  In 2005, Edwina Franklin was a 51-year resident of Lafayette Gardens Housing Development in Jersey City, New Jersey. Due to the Housing Opportunities for People Everywhere (Hope VI) Revitalization Grant, Mr. Franklin (now deceased) and Ms. Franklin were displaced to Holland Gardens Housing Development for seven years (2005-2012) following the demolition of Lafayette Gardens Housing Development.

8.  Edwina Franklin is a 2012 beneficiary of the Lafayette Gardens Hope VI 2001 homeownership affordable housing program, awarded to JCHA to revitalize Lafayette Gardens to a mixed-income community that included homeownership opportunities. As a homeownership stipulation, Ms. Franklin was required to attend homeownership classes that included plumbing, electrical, carpentry, and home inspection. She completed the classes in 2005. Ms. Franklin was positioned to purchase a home in 2005. However, due to environmental hazards on the property where the homeownership homes were to be built, she was displaced to Holland Gardens Housing Development for seven years.

9. Beginning in August of 2020, Ms. Franklin contacted JCHA's attorney, Heather Suarez, with a reasonable accommodation request to move from her two-story home in Newark, Delaware to a home that offers one-level living--which would have been safer and more accommodating of her limitations due to aging and an existing handicap--without losing HOPE VI funding. The JCHA was (and is) a second-silent mortgage lien holder on the Newark, Delaware property. Ms. Franklin contacted Ms. Suarez regarding reasonable accommodations as she was both JCHA's attorney and the constructor of the homeownership contract for the Lafayette Gardens HOPE VI program. At the time, Ms. Franklin was contractually bound to live in the home for 20 years. In the event that Ms. Franklin moved from the home prior to 20 years, she would have forfeited a percentage of the HOPE VI grant dollars based on JCHA's Lafayette Gardens recapture policy, thereby losing affordable housing. According to U.S.C. § 3604 (f)(2), "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap violates the act."

In part, the contract terms state the following:

"Mortgage Recapture: There is a one hundred (100%) percent recapture in years zero (0) to five (5) years. Thereafter, the mortgage balance is reduced seven (7%) percent of the original amount in years six (6) to sixteen (16). There is a size (6%) percent reduction in the original amount in years seven (7) to nineteen (19) There is a five (5%) percent reduction in year 20 (twenty)".

In review of Heather Suarez's response, dated, **October 14, 2020** (emphasis added), which included Exhibits A thru L, Ms. Franklin discovered the following:

1. The Jersey City Housing Authority recapture policy for Lafayette Gardens residents is harsher in its terms and conditions than standard lending practices for any other program in JCHA's portfolio. A look at the Dwight Homeownership program is necessary and will be discussed in the Jersey City Housing Authority section (emphasis added).

**Fair Housing and Equal Opportunity Office Failed to Investigate Fair Housing and Civil Rights Allegations**

10. HUD's Fair Housing and Equal Opportunity Office (FHEO) failed to investigate allegations of fair housing and civil rights complaints submitted in October 2020. After Ms. Suarez rejected Ms. Franklin's reasonable accommodation request, and upon review of Ms. Suarez's Exhibits A thru L, Ms. Franklin submitted a fair housing and civil rights complaint via HUD's FHEO's website. The complaint discussed the rejection of reasonable accommodations and JCHA's harsher terms and conditions imposed on Ms. Franklin.

11. The FHEO's office routed the complaint to HUD's New York regional office. The response, dated **October 26, 2020** (emphasis added), in relevant part, stated the following:

After reviewing the inquiry that you submitted to our Office, we find that the issue you raise does not fall within this Office's jurisdiction. This is a program issue, not a violation of the Act.

12. Ms. Franklin submitted a complaint within a year of JCHA's rejection of her reasonable accommodations request and upon learning her terms were more stringent than other programs under JCHA's umbrella.

13. On **November 24, 2020** (emphasis added), Ken Atkinson, Portfolio Management Specialist, U.S. Department of Housing and Urban Development, stated the following:

> Good Morning Vivian
>
> We hope you are well and safe.
>
> Please be advised that my Public Housing Director, Theresa Arce and my Field Office Director, Justin Scheid received several e-mails from Ms. Crystal Faison, the daughter of Edwina Franklin. Ms. Edwina Franklin, a 51-year resident of Lafayette Gardens Housing Development from the JCHA was dislocated due to the Hope VI Revitalization Initiatives. Ms. Franklin was displaced to Holland Gardens Housing Development for nine years, following the demolition of Lafayette Gardens Housing Development. Ms. Franklin had communications with the former Development Director of the JCHA, Ms. Joan Pollack that appears to still be unresolved.
>
> This is the first time anyone in the Office is aware and has been contacted regarding this situation.
>
> Please review all of the e-mail attachments that was sent by Ms. Faison.
>
> My Office is hereby requesting that the JCHA review this matter and contact Ms. Faison as soon as possible (Ms. Faison has been included in this e-mail) and her telephone number is (XXX) XXX-XXXX to discuss this matter. Please also provide my Office with the results of the JCHA's conversation with Ms. Faison.

14. On **November 24, 2020,** JCHA's Executive Director, Vivian Philips, replied:

> Good Morning Ken:
>
> Please be advised that attorney Heather Suarez is development counsel to the Jersey City Housing Authority and has been in communication with Ms. Faison. I am including Stephen Cea, our in-house counsel and Director of Development, Modernization and Sustainability on this email.
>
> Sincerely,
>
> Vivian Brady-Phillips

15. On **December 2, 2020**, in response to a Congressional Inquiry, Justin Schneid, Newark, New Jersey Field Office Director, stated the following:

> From: HUD Congressional
> Date: Wednesday, December 2, 2020 at 5:48 PM
> To: (Booker)
> Subject: RE: Congressional Inquiry - Edwina Franklin
>
> Hi Joe,
>
> Jersey City Housing Authority sent a letter to Ms. Franklin on October 14, 2020 outlining information to her about the Second Mortgage in question with 12 exhibits detailing the matter. Ms. Franklin advised that she does not wish to pay the JCHA the $79,200 currently owed to the JCHA pursuant to the Note and Second Mortgage and that she wishes to have those funds granted to her to be used to purchase a replacement property in Delaware. JCHA cannot find a way to be re-paid the balance due on the mortgage of $79,200 and then to provide those funds a second time for a second purchase of a market rate home in Delaware.
>
> On December 1, 2020, a firm that serves as General Counsel to JCHA responded again referring to their letter from October 14 and noted that if Crystal Faison, who states that she is Ms. Franklin's daughter, would like to receive copy of that letter, that she would need to provide a formal letter of representation to ensure that the JCHA is not disclosing confidential information without Ms. Franklin's consent.
>
> Ms. Crystal Faison then began reaching out to HUD via calls and email correspondence on November 16, 2020, which we have attempted to respond to but do require communicating with the JCHA to determine any issues related to the Second Mortgage. Ms. Faison has spoken to a member of our team multiple times and is in communication with a specialist within our Public Housing division.
>
> Thanks,
> Justin
>
> Newark, New Jersey Field Office Director
> U.S. Department of Housing and Urban Development
> Office of Field Policy & Management
> One Newark Center
> Newark, NJ 07102-5260

16. From August 12, 2021, until September 2021, multiple requests were to HUD's office to discuss allegations of Fair Housing and Civil Rights violations.

17. On September 24, 2021, in response to a multitude of emails sent to HUD, Lauren Appel from the Office of Multifamily Housing, requested information regarding the JCHA.

18. On December 21, 2021, Monica Shepherd, Director of Public Housing, suggested submitting a complaint via the FHEO website.

19. On January 17, 2022 (Crystal Faison, Edwina Franklin's daughter) submitted an email to Nykia Thomas, Jakisha Gray, and Helen L. Rogers, all Federal employees, which stated the following:

Hello,

According to the Housing and Urban Development's website, Secretary Fudge states the following: "The Department of Housing and Urban Development will work to eradicate…put an end to discriminatory practices in the housing market and ensure that fair housing rules are doing what they are supposed to do". The statement suggests Secretary Fudge and her administration would do their due diligence to address fair housing violations and allegations. After submitting documents to Ms. Lauren Appel on September 24, 2021, I identified The Jersey City Housing Authority. The PHA was identified on September 24, 2021. On December 21, 2021, I received an email stating the email did not contain the PHA's information.

Eradicating discriminatory housing practices is laborious. Allowing a housing authority to arbitrarily conclude they did not commit fair housing violations contradicts the Secretary's assertion, thereby allowing breaches of the Fair Housing Act to take place.

As already mentioned, I intentionally omitted the name of the Jersey City Housing Authority as HUD's Office of Fair Housing and Equal Opportunity (FHEO) subsequently allowed the housing authority to serve as the judge and jury. I am requesting a meeting with the Secretary of Housing, who serves as an unbiased decision-making authority.

Please find the following attachments (Sent on December 27, 2021):

1. Jersey City Housing Authority Inter-Departmental Memorandum

2. Jersey City Housing Authority Resolution (10 years vs. 20 years)

3. Inter-Departmental Memorandum/Lafayette Gardens HOPE VI Homeownership Program/Reference: HUD Submission of Homeownership Term Sheet (Not submitted or Approved by the United States Secretary of Housing)

I look forward to your response.

Regards,

Crystal Faison

20. On April 20, 2022, Jaime Santiago, Presidential Management Fellow/Senior Equal Opportunity Specialist, requested substantiating documents.

21. On **July 15, 2022**, HUD closed the complaint stating that the complaint was untimely.



U.S. Department of Housing and Urban Development
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza, Rm 3532
New York, New York 10278-0068
http://www.hud.gov/local/nyn/

July 15, 2022

REGULAR AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Edwina Franklin

Dear Ms. Franklin:

Subject: Housing Discrimination Complaint
Franklin, Edwina v. Jersey City Housing Authority
Inquiry No.: 679372
HUD File No.: 02-22-1014-8
Title VI Case No.: 02-22-2425-6
Section 504 Case No.: 02-22-2425-4

On April 05, 2022, you ("Complainant") filed a complaint with the Office of Fair Housing and Equal Opportunity ("FHEO") of the U.S. Department of Housing and Urban Development ("the Department" or "HUD") alleging that the Jersey City Housing Authority ("Respondent") discriminated against you based on your race (black), sex (female) and disability. More specifically, you allege that Respondents have failed to provide a reasonable accommodation for you to use accrued time towards homeownership for your HOPE VI grant, so that it may be applied to a property that would better suit your needs. You also allege that Respondent has failed to meet Hope VI program requirements.

This complaint investigation has been administratively closed because:

**Complaint is Untimely**

While FHEO has jurisdiction over cases alleging Fair Housing Act violations, complaints must be filed with HUD within one year of the last act of alleged discrimination.

On April 20, 2022, your daughter and representative, Crystal Faison ("Crystal"), informed the Department that you signed an agreement to move into your current two-story Newark, Delaware home in June 2012. She also stated that you learned of the requirement that you had to live in the home for 20-years to accrue homeownership rights in May 2012.

In August 2020, Crystal spoke with Respondent and informed them that your disability required you to move from your current two-story home to a one floor home due to mobility issues. Crystal further requested that the time spent in your current home under the Hope VI grant be applied to another home that would be better suited for your disability. Respondents denied this request. On January 13, 2021, Crystal submitted another reasonable accommodation request on your behalf which was also denied.

**Reasonable Accommodation Request Denied**

22.     HUD has the fiduciary responsibility of investigating Fair Housing and Civil Rights complaints. Complaints not investigated within 100 days of a complaint being made/submitted constitutes a violation of this responsibility. As required by the Fair Housing Act, 42 U.S.C § 3610 (a) and (b) (iv)j, the Secretary of HUD failed to investigate Fair Housing Act and Civil Rights Act allegations brought forth by Ms. Franklin in October 2020, abridging Ms. Franklin's civil and fair housing rights.

23.     After the JCHA denied Ms. Franklin's reasonable accommodation request on October 14, 2020, Ms. Franklin initiated a complaint via FHEO's website in October 2020 that alleged two FHA violations. The two-point complaint discussed a lateral move that would be befitting to Ms. Franklin's growing age and handicap, as well as the terms and conditions of her second-silent mortgage. Under the Fair Housing Act, the JCHA "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling" violates 42 U.S.C. § 3602 (f)(3)(B); and Del. C § 4603 (a)(2). By failing to investigate, HUD missed Ms. Franklin's ask of a reasonable accommodation.

24.     The Joint Statement of The Department of Housing and Urban Development and The Department of Justice, 2004 enacts that "a reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling" (internal quotation marks omitted). The JCHA denied the reasonable accommodation request on October 14, 2020.

25.     HUD's initial response to allegations that JCHA violated the Act focused on one point, specifically the second-silent mortgage terms and conditions imposed by the JCHA. HUD, without initiating an investigation, arbitrarily concluded that the JCHA did not violate the Act. Failing to investigate fair housing allegations deprived Ms. Franklin her due process rights. Due process in this context refers to the opportunity to be heard. HUD concluded the second-silent mortgage was a "program issue."

The response HUD sent is pictured below:



U.S. Department of Housing and Urban Development
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza Room 3532
New York, New York 10278-0068
http://www.hud.gov/local/nyn/

October 26, 2020

Edwina Franklin



Dear Edwina Franklin:

Subject: Inquiry Number 629298

    This is in response to your inquiry received by this Office on October 26, 2020. In summary, you state that Jersey City Housing Authority refused to address your concerns after being subjected to predatory lending practices by implementing to a second-silent mortgage forcing you to default on your home. You are requesting this Office to assist you with this matter.

    Please be advised that the Office of Fair Housing and Equal Opportunity of the U.S. Department of Housing and Urban Development enforces civil rights statutes which prohibit discrimination in the sale, rental or financing of most housing, on the bases of race, color, religion, sex, national origin, disability, or familial status.

    After reviewing the inquiry that you submitted to our Office, we find that the issue you raise does not fall within this Office's jurisdiction. This is a program issue, not a violation of the Act. You may be able to obtain assistance from the agency listed below.

U.S. Department of Housing and Urban Development
New Jersey Office of Public and Indian Housing
One Newark Center
1085 Raymond Boulevard, 13th Floor
Newark, NJ 07102-5260
Phone: (973) 776-7200
Toll-free: (800) 955-2232
Fax: (973) 645-2323
Email: hud-pihrc@ardentinc.com

    Please feel free to contact Jennifer D. Mubarak, Intake Branch Chief at (212) 542-7786, or toll free at 1-800-496-4294, if you have any questions regarding this letter.



26.    The program in which the letter is referencing is the HOPE VI revitalization program. The HOPE VI neutral homeownership program policy allows each PHA to establish its own recapture policy. HUD's homeownership recapture policy, neutral in its intent, allows each PHA to arbitrarily invoke terms and conditions for public housing residents seeking HOPE VI homeownership funding, can reach discriminatory lending practices, and can have a discriminatory effect on Lafayette Gardens HOPE VI homeownership beneficiaries. The letter indicates that the complaint regarding predatory lending practices towards Ms. Franklin constitutes "a program issue" and is "not a violation of the Act." However, it is the direct result of HUD's policy, coupled with the organization's lack of investigation that failed to mitigate the possibility of unreasonable

10

discriminatory outcomes for Ms. Franklin. HUD's policy condoned unlawful consequences for Ms. Franklin, namely the loss of affordable housing opportunities, with one reason being the cost of housing and interest rates increasing exponentially since 2020.

27. The 2013 Disparate Impact rule (24 CFR§100.500) states, "liability may be established under the Fair Housing Act based on a practices discriminatory effect…even if the practice was not motivated by discriminatory intent. Section 100.500 (a) of the rule defines a practice as having a "discriminatory effect" where "it actually or predictability results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or nation origin."

The regulations read as follows:

1. A PHA must have a policy that provides for the recapture of net proceeds in an amount that the PHA considers appropriate under the guidelines of this section 24 CFR §906.27 (3).
2. The PHA's program under this part may provide for consideration of any factors the PHA considers appropriate in determining how much of the gain from appreciation and assistance to recapture, including but not limited to the following (24 CFR §906.27 (3) (b).
3. Any other factors that the PHA considers appropriate in making the recapture determination under this section24 CFR §906.27 (3) (b) (7).

28. The Recapture and Anti-Speculation Restrictions in the Guidance FOR PHAs DEVELOPING A SECTION 32 HOMEOWNERSHIP PLAN states, "the recapture policy can be one that the PHA considers appropriate under the guidelines in this section."

29. The Merriam-Webster dictionary defines *any* as: 1: one or some indiscriminately of whatever kind (a) one or another taken at random (b): EVERY — used to indicate one selected without restriction 2: one, some, or all indiscriminately of whatever quantity: a: one or more — used to indicate an undetermined number or amount (quotation marks omitted).

30. HUD's Recapture and Anti-Speculation policy allows each housing authority to recapture gains based on "any" or whatever it considers appropriate. This policy allowed the JCHA to invoke an indiscriminate amount of time--namely twenty years--to their second-silent mortgage recapture terms and conditions for Lafayette Gardens residents, a predominantly minority community of African Americans, under the HOPE VI program. As in the JCHA case, a housing authority can and will, at its sole discretion, effectuate more onerous terms and conditions on minority loan applicants and applicants of a protected class. This imposition is a violation of the FHA, ECOA and a civil rights issue. Such onerous terms can deter homeownership.

In essence, if a bank, person(s), or program violates the FHA—the statutory authority to investigate and remedy FHA violations--HUD will commence an action by referring the matter to the Department of Justice. However, in this case, HUD, without any formal investigation has self-

determined that the allegations brought forth by Ms. Franklin did not fall within any provisions for which would constitute any clear violation of the 'Act.' *HUD* contending that discriminatory lending practices is a "program issue" and "not a violation of the Act" has separated the program from violating the FHA, thereby making HUD and its awardee above the law and free from legal obligation to protect Ms. Franklin from discriminatory practices. The JCHA took advantage of this policy which will be discussed under the heading The Jersey City Housing Authority.

31.   JCHA's onerous terms and conditions are safeguarded by HUD's Recapture Policy. The JCHA took advantage of this safeguard when it imposed an egregious amount of time a homeowner must stay in their home under their homeownership program. This policy perpetuates discriminatory lending practices toward African American recipients of the Lafayette Gardens HOPE VI funding. It has the propensity to facilitate reverse redlining and reinforce segregated housing patterns. In effect, it is an extension of discriminatory practices and a "peripheral civil rights issue."

32.   To understand the negative implications of reverse redlining, a brief discussion on redlining is needed.

Redlining is the discriminate practice of lenders that avoid the provision of services to communities of color, in particular housing and insurance services. Beginning in the 1930s, mortgage lenders produced distinct demarcations around communities of color that they did not want to give loans. Acting as a friend of the court, The United States describes its position of redlining by stating: "Redlining creates the market conditions in which reverse redlining thrives" (The United States Amicus Curiae). Reverse redlining is "the practice of extending credit on unfair terms" to communities that have been historically denied access to credit, predominantly on the basis of race (Hargraves v. Capital City Mortg. Corp., 140 F. Supp 2d 7, 20; D.D.C. 2000) (internal quotation marks omitted).

Two policies that address discrimination in lending are the Equal Credit Opportunity Act and FHA.

**Policy Statement on Discrimination in Lending; Notice Department of Housing and Urban Development**

33.   According to the Policy Statement on Discrimination in Lending, the policy applies to all lenders, including mortgage brokers, issuers of credit cards, and any other person who extends credit of any type. Discrimination in lending on the basis of race or other prohibited factors is destructive, morally repugnant, and against the law (Docket No. N-94-3751; FR-3706-N-01).

> A portion of the Policy Statement on Discrimination in Lending states the following: A number of federal statutes seek to promote fair lending. For example, the Home Mortgage Disclosure Act (`HMDA"), 12 U.S.C. 2801 et seq., seeks to prevent lending discrimination and redlining by requiring public disclosure of certain information about mortgage loan applications. The Community Reinvestment Act (`CRA"), 12 U.S.C. 2901 et seq., seeks affirmatively to encourage institutions to help to meet the credit needs of the entire community

12

served by each institution covered by the statute, and CRA ratings take into account lending discrimination by those institutions. The Americans with Disabilities Act, 42 U.S.C. 12101 et seq., prohibits discrimination against persons with disabilities in the provision of goods and services, including credit services. This policy statement, however, is based upon and addresses only the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. 1691 et seq., and the Fair Housing Act ("FH Act"), 42 U.S.C. 3601 et seq, the two statutes that specifically prohibit discrimination in lending.

The Equal Credit Opportunity Act (ECOA) prohibits discrimination in any aspect of a credit transaction which includes any extension of credit. (quotation marks omitted). The ECOA prohibits discrimination on race, color, religion, sex, marital status. The FHA prohibits discrimination in all aspects of residential real-estate transactions, including but not limited to purchasing real estate loans and FHA prohibits discrimination based on handicap (Policy Statement on Discrimination in Lending, Docket No. N-94-3751; FR-3706-N-01).

*Under the ECOA and FHA, a lender, may not do the following, because of a prohibitive factor:*

1. Fail to provide information or services or provide different information or services regarding any aspect of lending process, including credit availability, application procedures or lending standards
2. Vary terms of credit offered, including amount, interest rate, duration or type of loan, treat a borrower differently in servicing a loan or invoking default remedies or use different standards for pooling or packaging a loan in the secondary market (Policy Statement on Discrimination in Lending, Docket No. N-94-3751; FR-3706-N-01).

35. HUD has recognized the allowance of an indiscriminate amount of time a PHA can invoke its recapture policy as a "program issue." HUD's recapture policy allows minorities to be easily targeted and exploited for abusive terms that are unfair and unjust. Any resistance to the terms a PHA imposes and considers appropriate will result in an individual forfeiting homeownership, thus perpetuating negative housing patterns for minorities or individuals of a protected class.

36. HUD's policy allows the extension of credit under its 2001 HOPE VI program to be unequal for Lafayette Garden residents. Such unfairness is a civil rights issue. According to 42 U.S.C. § 2000d, Title VI prohibits discrimination based on race, color, or national origin under any program receiving federal financial assistance. When a lender treats applicants differently based on a prohibitive factor, it is considered disparate treatment.

**The Jersey City Housing Authority**

37. The Jersey City Housing Authority is a "creditor" within the meaning of the ECOA, 15 U.S.C. § 1691 a (e) as it engages in "residential real estate transaction" within the meaning of the FHA U.S.C. § 3605. The JCHA, the lender, failed to reach the statutory requirement of obtaining approval from the Secretary of Housing for its 2001 Lafayette Gardens homeownership program.

13

A PHA homeownership replacement of units developed under a Revitalization Plan must obtain approval of a homeownership proposal submitted under § 24 (d)(1)(j) (HUD Home Ownership Term Sheet). The PHA must certify compliance with the Fair Housing Act, 42 U.S.C §§ 3601-19, and regulations 24 CFR Part 100, Executive Order 11063, and Equal Opportunity in Housing Regulation 24 CFR PART 109. According to HUD's FOIA response, there were no records found for Lafayette Garden's Homeownership Program.

The FOIA request is pictured below:



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-5000

OFFICE OF ADMINISTRATION

TRANSMITTED VIA EMAIL
crystalfaison@gmail.com

Mrs. Crystal Faison                                      November 22, 2021

RE:   Freedom of Information Act Request
      FOIA Control No.: 21-FI-HQ-01683

Dear: Mrs. Faison:

This letter is in response to your Freedom of Information Act (FOIA) request dated September 20, 2021, to the Department of Housing and Urban Development's (HUD) FOIA Branch. You provided the supporting information below and requested records for numbers 1 – 7.

According to a Jersey City Housing Authority Interdepartmental Memorandum, The Jersey City Housing Authority submitted a Home Ownership Term Sheet to HUD (HUD 50159/OMB 2577-0157). "The following documents must also be submitted to HUD prior to closing in order to obtain full approval of the PHA's homeownership proposal. "(Homeownership Term Sheet, OMB Approval No. 2577-0157)".

1. Secretary of Housing approval of JCHA Homeownership Term Sheet;
2. HUD Homeownership Project Number and Deed Restrictions;
3. Housing Authority Certification and Assurances for Projects Involving Homeownership Units;
4. Hope VI Grant Addendum and Exhibits or Homeownership ACC Amendment and Exhibits;
5. Housing Authority Pre-Funding Certifications;
6. Declaration of Restrictive Covenants (recorded first and in standard form); and
7. Executed Hope VI Grant Addendum and exhibits or Homeownership ACC Amendment and Exhibits" (Page 14 of Document 50159).

A search was conducted by HUD's Office of Public and Indian Housing (PIH) by knowledgeable staff and no records were located. A search was conducted of the office J Drive, and there were no HOPE VI files available for this request. You may be able to find additional information at the link provided:
https://www.hud.gov/program_offices/public_indian_housing/programs/ph/hope6/about#4b



www.hud.gov       espanol.hud.gov

38. The lack of approval allowed the JCHA to engage in discriminatory lending practices that systematically structured second mortgage(s) for Lafayette Gardens Housing Authority residents under the Hope VI program, which then resulted in adherence to harsher terms and conditions than standard lending practices for any other program in JCHA's portfolio, deterrence from legal action, and became oppressive in its default remedies for Lafayette Gardens residents that discouraged homeownership.

39. Acting as a friend of the court, the United States government writes, "predatory lending is sufficiently identifiable such that, when its victims are selected by race, it constitutes discrimination" (internal quotation marks omitted) (Amicus Curiae, Hargraves v. Capital City Mortgage Corp).

40. JCHA's homeownership loans were specifically targeted at Lafayette Gardens residents, African Americans, and were structured to aid in defaulting loans and to deter homeownership. Further, under the Hope VI program, JCHA took over seven years to issue a second-silent mortgage with a 20-year lien for Ms. Franklin. The Lafayette Gardens HOPE VI homeownership program was the only program in its portfolio with such restrictions.

41. Dwight Street Homes vs. Lafayette Gardens Homeownership Plan

*Acting as friend of the court, the United States writes, Reverse Redlining: Prohibiting Reverse Redlining is Consistent with the Purpose of the Fair Housing Act to eradicate racial segregation." (Amicus Curiae, Hargraves v. Capital City Mortgage Corp., 2000).*

> "Targeting minority communities for predatory lending is called reverse redlining. It is in the United States' view that reverse redlining can violate the Fair Housing Act and the Equal Credit Protection Act" (Amicus Curiae, Hargraves v. Capital City Mortgage Corp). The United States writes, "In contrast to redlining, which is the practice of denying the extension of credit to specific geographic areas due to the income, race or ethnicity of residents, reverse redlining is the practice of extending credit on unfair terms to those same communities" (United Companied Lending Corp. v. Sargeant, 20 F.Supp.2d.192, 203 n5; D. Mass 1998 citing S. Rep. No. 104-169, at 21, 1993; (Amicus Curiae, Hargraves v. Capital City Mortgage Corp., 2000). (internal quotation marks omitted)

*Acting as a friend of the court, the United States writes, Violation of Equal Credit Protection Act: "Targeting African American communities for predatory lending violates ECOA even though credit was not denied" (Amicus Curiae, Hargraves v. Capital City Mortgage Corp., 2000).*

42. The Equal Credit Opportunity Act (ECOA) (12 CFR part 202) prohibits discrimination in any aspect of credit transaction. The Discriminatory Conduct Under the Fair Housing Act (24 CFR Part 100), a HUD regulation, prohibits discrimination in mortgage lending. Per JCHA Interdepartmental Memo dated May 23, 2012, the JCHA used funding from the Dwight Street Homeownership program (HUD Project Number #NJ39-P009-020), a 1990s homeownership program already in place before Ms. Franklin's displacement to Holland Gardens, and before

15

Lafayette Gardens proposal submission to HUD for Hope VI. It took JCHA more than seven years to offer funding under the Dwight Street Homes program to Ms. Franklin.

43. In the HOPE VI Dwight Street contract, loans are forgiven in ten years, compared to loans for Lafayette Gardens HOPE VI homes for 20 years. Loan forgiveness is given in years six through ten, but double that for Ms. Franklin's loan forgiveness schedule. For example, approximately $14,583 is forgiven each year under one program, while Ms. Franklin's plan is reduced by $7,700 each year.

> (a) In General. -- It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin (42 U.S.C. 3605 § 805, Discrimination in Residential Real Estate-Related Transactions).

44. Although credit was granted, Ms. Suarez, the constructor of both the Dwight Street Homes and Lafayette Gardens homeownership contract, resulted in a discriminatory practice against Ms. Franklin by invoking unfavorable credit terms. It shall be unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction, according to 15 U.S.C. §1691 (1).

45. The JCHA was awarded 34,140,000 US dollars in 2001 to revitalize Lafayette Gardens that included homeownership for 30 Lafayette Gardens families. The JCHA executed grant agreement was dated April 23, 2002. According to the executed grant agreement, construction activities were to commence within five months and be completed in five years. The demolition and revitalization of Lafayette Gardens and homeownership opportunities should have been made available conceivably by **October 16, 2006**. Ms. Franklin was displaced from Lafayette Gardens from September 2005 to June 2012. As mentioned, Ms. Franklin was a 51-year resident of Lafayette Gardens who was dislocated for seven years. In 2012, the JCHA imposed a 20-year second-silent mortgage for Ms. Franklin.

*Environmental Justice*

46. Recipients of Housing and Urban Development assistance, including Public Housing programs including Housing for People Everywhere VI grants, are responsible for conducting environmental reviews in accordance with 24 CFR Part 58. "By Executive Order 12898, (a) public housing may be developed only in environmentally sound and desirable locations that will avoid disproportionately high and adverse environmental effects on minority and low-income communities; and (b) proposed activities may not have the effect of excluding or denying persons (including populations) from participation in or benefits from those activities, or subjecting persons (including populations) to discrimination because of their race, color, or national origin." Accordingly, PHAs must complete an environmental review on each affected site per 24 CFR Part 50.

47. According to JCHA's 2012 Interdepartmental Memorandum, JCHA revised its homeownership plan due to environmental issues, i.e., contaminated soil, stating that remediation would not be cost-effective to build homes under the Lafayette Gardens Hope VI program.

48. The JCHA revitalization plan included 30 homeownership opportunities that were reduced to a first-come-first-serve basis for six Lafayette Gardens families due to environmental issues. Despite having participated in all the required classes under the Lafayette Gardens HOPE VI homeownership program, Ms. Franklin's participation was reduced to a first-come-first-serve applicant.

49. Due to environmental issues, the JCHA delayed homeownership opportunities for over seven years for the Lafayette Gardens residents, leaving families without the opportunity to purchase a home under HOPE VI, then once the funding became available using proceeds from Dwight Street Homes, the JCHA imposed a 20-year second-silent lean.

> The Department of Justice writes, "Disparate impact regulations seek to ensure that programs accepting federal money are not administered in a way that perpetuates the repercussions of past discrimination. As the Supreme Court has explained, even benignly-motivated policies that appear neutral on their face may be traceable to the nation's long history of invidious race discrimination in employment, education, housing and many of the areas" (DOJ) See Griggs v. Duke Power Co., 401 U.S. 424, 430-31 (1971); City of Rome v. United States, 446 U.S. 156, 176-177 (1980); Gaston City v. United States, 395 U.S. 285.

50. As a result of the Defendant's Recapture policy and the JCHA discriminatory conduct, Ms. Franklin suffered actual damages, loss of affordable housing opportunities that is aligned with her needs, emotional and physical distress, humiliation, and embarrassment. **In approximately two years since the original request to move based on her disability, housing prices have increased substantially, reducing affordable housing stock.**

**Fair Housing Act Violations**

51. The Defendant's Recapture Policy has a discriminatory effect that violates FHA 42, U.S.C § 3604 and ECOA by allowing The Jersey City Housing Authority to invoke an indiscriminate amount of time to its homeownership program. HUD's policy discriminates on the basis of race in making available, or terms or conditions of, residential real-estate transactions, in violation of the Fair Housing Act, 42 U.S.C §3605(a)

52. The Defendant's policy has a discriminatory impact on the basis of race origin in terms and conditions, carries privileges of the provision of services in connection with sale of a dwelling, and is in violation of the Fair Housing Act, 42 U.S.C § 3604 (b).

53. The Defendant, The Department of Housing and Urban Development, violated 42 U.S.C § 3604 (f) (2), To discriminate against any person in the terms, conditions, or privileges of sale or

17

rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap.

The Plaintiff is an aggrieved person as defined in 42 U.S.C. § 3602 (i).

**Request for Relief**

Award monetary damages to Plaintiff.

DATED THIS 14 day in October, 2022

Edwina Franklin, Pro Se